IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA,

v.                                                                        CASE NO.: 2:17-cr-13

DOUGLAS FRANKLIN,

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Douglas Franklin ("Franklin") has been charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) Franklin filed a Motion to Suppress Evidence to which the Government filed a Response. (Docs. 14, 16.) The Court conducted a hearing on Franklin's Motion on June 21, 2017. (Doc. 20.) Franklin, Franklin's counsel, counsel for the Government, the Government's case agent, and the arresting officer all attended the hearing. At the hearing, the Court received testimony and documentary evidence as well as argument from counsel. Franklin contends that a law enforcement agent improperly stopped his vehicle in violation of the Fourth Amendment, and that all evidence discovered during that stop should be excluded. (Doc. 14.) For the reasons which follow, I **RECOMMEND** that the Court **DENY** Franklin's Motion to Suppress Evidence.[1]

### BACKGROUND

The credible testimony and evidence entered at the hearing, as well as the materials submitted by the Government in this case, reveals the following. In the early hours of

---

[1] The Government also filed a Motion Request for Discovery and Inspection. (Doc. 15.) As discussed at the hearing on June 21, 2017, counsel for Franklin has provided all appropriate discovery materials and the parties will continue to do so in accordance with Federal Rule of Criminal Procedure Rule 16. Accordingly, the Court **GRANTS AS UNOPPOSED** the Government's Motion Request.

January 28, 2017, Officer Greg Crews, with the Kingsland Police Department, observed Franklin driving a silver Nissan Pathfinder at a "very low rate of speed." (Doc. 16-1.) Officer Crews' radar revealed that Franklin was driving 19 miles per hour in a 35 mile per hour zone. Officer Crews further observed Franklin's vehicle "make contact with the center line a few times[.]" (Id.) Officer Crews testified that in his experience, these signs, in addition to the early hour, were indicative of a driver operating a vehicle under the influence. At 2:28 a.m., Officer Crews called the Camden County dispatch center to run the tags on Franklin's vehicle. (Doc. 21-1, p. 27.) After dispatch relayed that the tag was registered to a red Ford F100, and not the vehicle Franklin was driving, Officer Crews initiated a traffic stop. (Id.) Both vehicles pulled over at the parking lot of a nearby gas station at approximately 2:31 a.m. (Id. at p. 21.) Upon stopping, Franklin immediately attempted to exit the vehicle. As Officer Crews approached and ordered Franklin back into the vehicle, he noted that Franklin had a firearm tucked into his waistband, despite Franklin previously claiming that he was unarmed. After a physical altercation, taser deployment, and a brief chase around the gas station, Officer Crews was finally able to subdue and arrest Franklin.

## DISCUSSION

Franklin seeks to suppress evidence of the firearm seized during the January 28, 2017, traffic stop. Franklin argues that the stop violated his Fourth Amendment right to freedom from unreasonable searches and seizures because Officer Crews did not have sufficient specific, articulable facts to support a reasonable suspicion that Franklin was engaged in criminal activity. To determine whether this evidence should be suppressed, the Court must determine whether Officer Crews had probable cause to believe that a traffic violation occurred or had a reasonable

suspicion that Franklin was engaged in criminal activity.  Whren v. United States, 517 U.S. 806, 811 (1996); Terry v. Ohio, 392 U.S. 1 (1968).

**I.     The Parties' Assertions**

Franklin asserts that there were no specific, articulable facts to support a reasonable suspicion that he was engaged in criminal activity because he was only engaged in legal conduct at the time of the stop.[2]  Franklin argued during the hearing that, based on the dispatch records, Officer Crews did not know of Franklin's mismatched tags at the time he decided to make the arrest.  Thus, Officer Crews' decision to conduct a traffic stop was based only on his observations that Franklin was driving too slowly and that he'd touched the center line a few times.  Franklin argues that these two factors are insufficient to create a reasonable suspicion that he was engaged in criminal conduct.  In particular, Franklin contends that, although O.C.G.A. § 40-6-184 makes it a violation for a driver to drive too slowly, Franklin was approaching an intersection and not impeding traffic.[3]  Second, Franklin argues that he did not actually cross the center line and, therefore, did not violate O.C.G.A. § 40-6-48.[4]  Thus, Franklin argues, because he was engaged in solely legal activity, Officer Crews did not have specific, articulable facts to support a reasonable suspicion that Franklin was engaged in criminal conduct.

---

[2] As noted above, there are two standards to determine whether a stop is constitutional under the Fourth Amendment.  Franklin's brief only makes arguments as to the lesser "reasonable, articulable suspicion" standard and not probable cause.  See Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000) ("[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.") (internal quotations and citations omitted).

[3] "No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation."  O.C.G.A. § 40-6-184(a).

[4] "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."  O.C.G.A. § 40-6-48(1).

3

The Government responds that Officer Crews had both probable cause to believe that Franklin had engaged in traffic violations and a reasonable suspicion that Franklin was engaged in criminal conduct. Specifically, Officer Crews observed Franklin violating the aforementioned traffic laws as well as O.C.G.A. § 40-2-41, which prohibits driving a vehicle with mismatched tags—a misdemeanor under Georgia law.[5] The Government argues that even if Officer Crews did not know the tags were mismatched, the early hour and weaving even when driving at slow speeds were sufficient articulable facts to support his suspicion that Franklin was driving under the influence. However, the mismatched tags, a criminal violation in and of itself, were also signs indicative of a stolen vehicle. Thus, the government asserts that Officer Crews had probable cause, if not reasonable suspicion, to believe that Franklin had committed not only traffic violations, but was engaged in criminal activity.

## II. Whether Officer Crews Acted on Probable Cause of a Traffic Violation or Reasonable Suspicion of Criminal Conduct

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police stop a motor vehicle, a Fourth Amendment "seizure" occurs. Whren, 517 U.S. at 809–810. A traffic stop is constitutional when the police have probable cause to believe that a traffic violation has occurred. Id. at 810. To determine whether probable cause or reasonable suspicion has been met, the Court must examine the officer's actions and assess whether they were reasonable. United States v. Chanthasouxat, 642 F.3d 1271, 1275 (11th Cir. 2003); see also United States v. Knights, 534 U.S 112, 118 (2001) ("The touchstone of the Fourth Amendment is reasonableness . . . ."). This reasonableness examination is based on

---

[5] "[E]very vehicle required to be registered under this chapter . . . shall at all times display the license plate issued to the owner for such vehicle . . . . Any person who violates any provision of this Code section shall be guilty of a misdemeanor." O.C.G.A. § 40-2-41.

4

"objective factors[ ] and the officers' subjective motives in making the stop are irrelevant." United States v. Rowls, 402 F. App'x 467, 468 (2010). Additionally, "an officer's reasonable mistake of fact may provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop[.]" Chanthasouxat, 642 F.3d at 1276. Notably, the United States Supreme Court has held that a traffic stop is constitutional even when police only have probable cause to believe that a minor or common traffic violation has occurred. Arizona v. Johnson, 555 U.S. 323, 331 (2009); see also Whren, 517 U.S. 806, 818 ("[W]e are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement.")

Officer Crews observed Franklin commit at least one traffic violation before he initiated the stop: Franklin was driving a vehicle with license plates registered to another vehicle in violation of O.C.G.A. § 40-2-41.[6] (Doc. 16-1). Because this traffic violation was sufficient to create probable cause for Officer Crews to conduct a traffic stop, the Court finds that Officer Crews did have probable cause to stop Franklin. U.S. v. Woods, 385 F. App'x 914, 917 (11th Cir. 2010) ("[P]olice officer can pull a car over if he simply observes that car committing a traffic infraction."); see also Pennsylvania v. Mimms, 434 U.S. 106 (probable cause existed where driver was driving with an expired license plate); Arizona v. Johnson, 555 U.S. 323 (2009) (probable cause existed where driver was driving under suspended registration).

---

[6] Under O.C.G.A. § 40-2-41, a person driving a vehicle without a proper license tag is guilty of a misdemeanor. Thus, the Court could apply the more lenient reasonable suspicion standard to Officer Crews' observation of Franklin's improper tag. However, even if the probable cause standard applied, Officer Crews' information regarding Franklin's improper tags prior to initiating the traffic stop met that standard.

During the hearing, Franklin did not dispute that he violated O.C.G.A. § 40-2-41 by failing to have a proper tag on his vehicle. Rather, he disputed the credibility of Officer Crews' account that Officer Crews was aware of the tag violation prior to the traffic stop. Franklin contends that Officer Crews did not actually check the tags on his vehicle until after the stop was initiated. Thus, Franklin argues that Officer Crews only made the stop based on the slow rate of speed and "slight weaving," which, in Franklin's view, were insufficient to provide probable cause or reasonable suspicion. (Doc. 14, pp. 3–5.) The Court finds Officer Crews' testimony credible and consistent with the other evidence of record.

Officer Crews testified that he regularly checks the tags of vehicles before conducting a traffic stop and did so in this instance as well. His answer remained consistent throughout the hearing despite repeated questioning from both parties. Franklin contends the 911 dispatch records entered into evidence at the hearing belie Officer Crews' testimony. However, upon close examination, the dispatch records do not contradict and likely support Officer Crews' version of events. The dispatch records indicate that Officer Crews first called dispatch for information regarding Franklin's tags at approximately 2:28 a.m. (Doc. 21-1, p. 27.) At 2:29:49 a.m. the "Vehicle Information" call was transferred to the new call Officer Crews made to conduct the traffic stop and to report the stop location. It appears that the information regarding Franklin's truck came approximately 11 seconds after the call was transferred, however Officer Crews did not report the actual location of the stop until nearly 30 seconds after dispatch relayed Franklin's license plate information.[7]  (Id. at p. 21.) While the dispatch records do appear disjointed, they do not directly contradict Officer Crews' testimony. Additionally, to the extent any entries are inconsistent with Officer Crews' testimony, no information was provided as to

---

[7]  Officer Crews further testified that when he called dispatch to report that he was conducting a traffic stop, he simultaneously relayed the stop location information.

6

how and when these entries are created, much less the accuracy of the time notations in the records.  Thus, Officer Crews' recollection of the events is the more credible and controlling account.  Accordingly, the Court finds that Officer Crews checked Franklin's license plate prior to stopping the vehicle.

However, even if Officer Crews acted without first checking Franklin's license plate, sufficient articulable facts existed to support a reasonable suspicion that Franklin was engaged in criminal conduct by driving under the influence in violation of O.C.G.A. § 40-6-391.  In fact, Officer Crews acted properly even if all of Franklin's contentions are true—that he did not actually cross the center lane and that he was only driving slowly because he was approaching an intersection.  "A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity."  United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004) (citations omitted).  Here, the combination of the unusual hour, Franklin's driving at an unusually slow rate of speed, Franklin's weaving even while driving at that slow rate, and Officer Crews' knowledge that such signs were indicative of driving under the influence, created sufficient articulable facts to support a reasonable suspicion that Franklin was engaged in criminal conduct—driving under the influence.  See United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989) (reasonable suspicion standard requires officer to "provide some minimal, objective justification for the stop. . . . Such facts may be derived from various objective observations . . . and consideration of the modes or patterns of operation of certain kinds of lawbreakers.") (internal quotation and citations omitted).

Accordingly, the Court concludes that Officer Crews had both a reasonable suspicion and probable cause to conduct a traffic stop on Franklin.  Officer Crews did not violate Franklin's

Fourth Amendment rights and therefore, the firearm and other evidence seized from the traffic stop are not subject to suppression.

## CONCLUSION

Based on the reasons set forth above, I **RECOMMEND** that the Court **DENY** Franklin's Motion to Suppress Evidence, (doc. 14), and allow the Government to use the firearm discovered during the traffic stop as evidence in the trial of this case.  Any party seeking to object to these rulings must file specific objections within **fourteen (14) days** of the date of this Report and Recommendation.

Any objections asserting that the Magistrate Judge failed to address any contention raised in the Motions must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's ruling directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon counsel for Franklin and the Government.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 11th day of July, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA